367 So.2d 357 (1979)
STATE of Louisiana
v.
Monroe L. JENNINGS, Jr.
No. 62965.
Supreme Court of Louisiana.
January 29, 1979.
*358 C. Allen Bradley, Jr., Evans & Bradley, De Ridder, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Pegues, Dist. Atty., David W. Burton, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.[*]
Monroe L. Jennings, Jr. was charged by bill of information with the armed robbery of a convenience store, a violation of R.S. 14:64. After a jury trial the defendant was found guilty as charged and was sentenced to serve fifteen years with the Louisiana Department of Corrections. On appeal the defendant assigns three errors; one error requires reversal.
During the early morning hours of December 11, 1977, law enforcement officers of Beauregard Parish overheard a radio transmission from Troop D of the Louisiana State Police in Lake Charles which reported an armed robbery and attempted murder. The perpetrators were reported to be in a white Oldsmobile with a red top, license number KWE372, and to be headed north on U. S. Highway 171 toward DeRidder. The officers soon afterward observed a vehicle fitting the description traveling in the same direction at a high speed and requested assistance. A roadblock was set up and the car was stopped when a DeRidder policeman shot out one of its tires. The Oldsmobile was towed to the city police station where it was searched and its contents seized by the authorities. The defendant and two companions were arrested and taken to the parish jail.
During the booking and initial interrogation procedure at the parish jail, Officer Cooley of the sheriff's office asked the defendant to sign a waiver of rights form and asked him whether he would attempt to escape if the handcuffs were removed. At that point, Officer Benton of the DeRidder police said Jennings wouldn't go anywhere, then approached Jennings, ordered him to stand and to open his mouth, and placed a .45 caliber pistol in his mouth. Benton then cocked the trigger. The defendant also alleges that he was subjected to curses and racial insults by the two officers, especially Officer Cooley.
Approximately thirty-six hours later on December 12,1977, the defendant was questioned by deputies Ronald Wilson and Joe Bartlett of the sheriff's office and gave a statement admitting his part in the robbery. According to the officers, defendant appeared calm and in complete control of his emotional and mental faculties. Officer *359 Bartlett advised the defendant of his rights to counsel and to remain silent, and Jennings signed a form waiving these rights. Jennings gave a "dry-run" statement, which was later typed by Officer Bartlett and signed by Jennings who also initialed each page. Both officers were aware that Jennings had been threatened on the previous day, and Officer Bartlett testified that he attempted to emphasize to the defendant that his department took no part in those actions and did not approve of them.
Although Jennings corroborated the officers' testimony in several particulars, he insisted that his statement resulted from fear of further mistreatment. According to his testimony, Officer Bartlett in the course of conversation leaned back in his swivel chair toward a rifle in a gunsock which was propped against a wall behind the officer's desk. Bartlett then allegedly told the defendant that he did not want to get rough and that the police would discover what had happened in any event. Jennings claimed this behavior convinced him that he would be beaten with the rifle unless he waived his rights and confessed his involvement in the crime.
When questioned about these allegations, both officers were uncertain whether a rifle had been present in the office, but admitted that one was sometimes kept in a gunsock behind Bartlett's desk. Officer Bartlett stated unequivocally that he had not moved toward any gun while interrogating Jennings, but later qualified this statement by admitting that he was certain that he had rocked back in his chair during the interview. Bartlett was also certain that he had never referred to "getting rough" with the defendant, but Officer Wilson testified that he perhaps remembered such a reference in the context of Bartlett's statement that he did not intend to act like the city policeman.
Before a confession may be admitted in evidence, the state bears the burden of proving beyond a reasonable doubt that the statement was freely and voluntarily made and was not the result of threats, coercion, or promises. R.S. 15:451; C.Cr.P. 703; State v. Bias, 352 So.2d 1011 (La.1977); State v. Glover, 343 So.2d 118 (La.1976). The state must also prove that Miranda warnings were properly given to the defendant. State v. Hutto, 349 So.2d 318 (La.1977); State v. Ross, 343 So.2d 722 (La. 1977).
In reaching its decision, the trial court relied on several circumstances as indicating that the confession given on December 12 was sufficiently insulated from any taint arising from the pistol incident. The court noted that the defendant confessed almost thirty-six hours after the incident and after having been advised of and having waived his Miranda rights. The statement was given in the sheriff's administrative offices during the early afternoon of a workday rather than "in the dead of the night at some unseemly hour." The defendant was also assured by Deputy Bartlett that the sheriff's office in no way condoned the conduct of the DeRidder policeman.
Although these factors, when viewed alone, may indicate that Jennings' statements were voluntary and not a product of coercion, other circumstances belie this conclusion. While it is true that thirty-six hours elapsed between the threat and the confession, Jennings passed this time in the exclusive custody of the police in the same jail where he was threatened. The prosecution has also stressed the fact that a city policeman pulled the gun on the defendant, but that he confessed to sheriff's officers. However, Officer Cooley of the sheriff's department was present at the incident and did nothing to restrain Officer Benton from mistreating the prisoner. The defendant also testified that Officer Cooley cursed him and referred to an accomplice as "that nigger in the other room." It is therefore not unlikely that any assurances which Deputy Bartlett later gave that the sheriff's office did not approve of such methods failed to assuage Jennings' fears. Finally, it would not have been unreasonable for the defendant to interpret Deputy Bartlett's actions as an implied threat of further mistreatment. Bartlett admitted that he had leaned back in his chair during the interrogation and that a rifle could have been leaning against *360 the wall behind his desk. Although Bartlett denied ever having said that he did not want to get rough, Officer Wilson stated that the remark could have been made when Bartlett tried to separate the actions of his department from those of the DeRidder policeman. When all the circumstances are considered, it is easy to understand that Jennings knew he was in a place where guns were used to obtain cooperation.
The trial judge correctly characterized the deplorable conduct of the police at the booking of defendant, and would have suppressed the confession if it had been made an hour or so after the incident. The coercive effect of the police misconduct cannot be denied. The duration of that coercive effect might vary among people and places. But the record before us does not establish that the effect (of the .45 caliber gun barrel in defendant's mouth while the gun was cocked) had diminished at the time of the interrogation. That was the state's burden. Therefore, the trial court was in error to hold that the prosecution had carried its heavy burden of proving that the confession "was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." R.S. 15:451.
Accordingly, the conviction and sentence are reversed and the case is remanded to the district court for further proceedings consistent with the views expressed herein.
NOTES
[*] Chief Judge L. Julian Samuel participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Joe W. Sanders, Retired.