381 So.2d 828 (1980)
STATE of Louisiana
v.
Aaron SINGLETON.
No. 66422.
Supreme Court of Louisiana.
March 12, 1980.
*829 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Marvin Opotowsky, Louise Korns, Asst. Dist. Attys., for plaintiff-relator.
Edward Haggerty, Jr., New Orleans, for defendant-respondent.
PER CURIAM.
Defendant is charged by bill of information with possession of Talwin in violation of La.R.S. 40:969. He moved in the trial court to suppress statements made to an assistant district attorney in the Career Criminal Bureau of the Orleans Parish District Attorney's Office on November 8, 1979. After a hearing conducted on December 17, 1979, the trial court granted the motion. We then granted the state's application for supervisory writs to review that judgment below. We now reverse.
Defendant was initially arrested on October 31, 1979 for simple robbery, La.R.S. 14:65, and incarcerated in the Orleans Parish Prison. The district attorney's office thereafter formally charged him with the more serious offense of purse snatching, La.R.S. 14:65.1 for the same incident. Apparently in the mistaken belief that the district attorney's office had refused the robbery charge altogether, the prison authorities then released defendant.
On November 17, 1979, defendant arrived at the Career Criminal Bureau in search of his clothing taken by the police at the time of his arrest. His inquiry led him to an assistant district attorney who discovered the mix-up with the prison officials over the charges. At the direction of the district attorney, defendant found himself placed under arrest for the purse-snatching offense by an investigator for the office. In a search incident to that arrest, the investigator discovered tablets of Talwin and Pyribenzamine (so-called "T's and Blues" in the trade) in defendant's pockets. Rearrested for the narcotics offense by the investigator,[1] and in the presence of both men, defendant identified the pills as "only `T's and Blues.'" It was this statement that the trial court suppressed.[2]
*830 At the hearing on the motion, both the district attorney and the investigator testified unequivocally that defendant had received his Miranda warnings twice in the Career Criminal Bureau: once, after his arrest on the purse snatching charge; and again after his arrest for possession of Talwin. In both instances, the advice was verbal. The witnesses also denied that any force or intimidation, promises or threats, had been used against defendant to secure his statement. The defense called no witnesses of its own.
The trial court, however, looked to a printed Miranda waiver form bearing the notation that defendant had refused to sign. Observing that "[i]f [defendant] was questioned after his refusal to sign, I will have to sustain the motion," the trial court specifically found that the investigator "advised [defendant] of his rights and filled out the form in the [Career Criminal Bureau] Office and then there was a questioning." The trial judge granted the motion accordingly.
In its application for supervisory writs, the state argues that defendant refused to sign the printed Miranda form not in the Career Criminal Bureau but in Central Lock-Up where he had been taken for booking after his re-arrest on the Talwin charge. The state concludes that a refusal to sign a written waiver cannot retrospectively invalidate fully-informed statements already made. Although we find the record ambiguous on the question when defendant refused to sign the form, we agree with the state that, in this instance, the refusal did not outweigh an otherwise adequate showing of voluntariness.[3]
As set forth in State v. Adams, 347 So.2d 195, 199 (La.1977), this Court has repeatedly cautioned that:
Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451; La.Code Crim.P. art. 703(C). It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Adams also notes that the trial court's "conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. [citations omitted]."
We find that latter showing here. The testimony of the assistant district attorney and investigator at the hearing was unrebutted and to the point: defendant had received his Miranda warnings before he made any statements; and no threats, promises, or coercion had been used against him. Although apparently satisfied with this testimony in all other respects, the trial court thought that defendant's refusal to sign a printed Miranda form alone indicated the involuntariness of his subsequent statement. We disagree. While the authorities must "scrupulously honor" any request by an accused to remain silent, Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); State v. Manning, 380 So.2d 46 (La.1980), do not find a refusal to sign a written waiver form of itself tantamount to such request. As set forth in State v. McNeal, 337 So.2d 178, 180 (La.1976), the presence of defendant's signature on a waiver form is only one element among many in determining the voluntariness of a statement.
Accordingly, we hold that on this record the state met its heavy burden of proving the statement voluntary even assuming (without deciding) that defendant gave his *831 statement after refusing to sign the waiver form. We therefore reverse the judgment of the trial court and remand this case for all proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] The legislature added Talwin to Louisiana's list of controlled dangerous substances by Act No. 659, 1979. That act became effective on September 7, 1979 before the date of this offense. This case, therefore, does not present the same problem with regard to the legislature's delegation of authority under La.R.S. 40:962(B) that we considered in State v. Rodriguez, 379 So.2d 1084 (La.1980). The state, therefore, may prosecute defendant consistent with the Rodriguez opinion.
[2] After defendant's arrest for Talwin, the district attorney apparently took him aside for questioning on the robbery offense. In the course of this interview, defendant allegedly stated that he had "snatched the purse from the old black woman because he needed the money to pay off a loan." Our granting of the state's application for supervisory writs brought before us only the record in the Talwin case, although both charges are pending before the same trial judge. To this extent, we limit our decision here to the Talwin prosecution alone.
[3] The investigator in fact never testified where he read the printed form to defendant, although the form itself, as the trial court admitted, bears the initials "CLU," i. e., Central Lock-Up. In view of our decision here, we do not attempt to resolve this factual ambiguity.