460 So.2d 1069 (1984)
STATE of Louisiana, Appellee,
v.
Richard W. THOMAS, Appellant.
No. 16207-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
Rehearing Denied January 4, 1985.
Writ Denied March 15, 1985.
*1070 Indigent Defender's Office by William T. Giddens and Richard E. Hiller, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., New Orleans, Paul J. Carmouche, Dist. Atty., Howard M. Fish and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN and SEXTON, JJ., and PRICE, J. Pro Tem.
*1071 PRICE, Judge Pro Tem.
The defendant, Richard Wayne Thomas, appeals his conviction of Sexual Battery, contrary to the provisions of LSA-R.S. 14:43.1. The defendant was originally indicted for the offense of aggravated rape, LSA-R.S. 14:42. However, the jury found the defendant guilty of the lessor included offense of Sexual Battery. The defendant was sentenced to serve six years at hard labor. Finding no error by the trial court, we affirm.
FACTS
On the evening of May 13, 1982, Angela Jefferson, age sixteen, went to the Omega Club, a bar located on Line Avenue in Shreveport. The testimony at trial reflects that as Angela was leaving the club, she and the defendant had an altercation and that at some point in the argument, Angela ran out of the club from the defendant. Tommy Lee Gray, who accompanied her that night, caught up with Angela and walked with her towards her home.
Angela and Gray testified that near the intersection of 70th Street and Thornhill, the defendant and a companion, Rusty Bristo, drove up beside them. The defendant got out of the vehicle he was driving and pointed a gun at Gray and told him to keep walking and not to look back. Gray followed defendant's instructions and kept walking. The defendant then forced Angela into the front seat of the car between defendant and Bristo with Bristo at the driver's seat.
Angela testified that the defendant and Bristo then drove to a nearby field where the defendant tore her clothes off as Bristo held the gun. Angela testified that after the defendant tore her clothes off, the defendant raped her. Angela further testified that after she had intercourse with the defendant she managed to escape, running to a nearby house. It is upon these events for which the jury found the defendant guilty of Sexual Battery.
The defendant filed seven assignments of error in the district court. However, assignments of error 2, 3, 4, 6, and supplemental assignment of error number 1 were not briefed or argued and are thus deemed abandoned. State v. Domingue, 298 So.2d 723 (La.1974). Assignments of error that are briefed by defendant are as follows:
1. The lower court erred in denying the motion to suppress in relation to the statements given to law enforcement officers and the physical evidence obtained from his automobile.
5. The conviction should be reversed because no rational trier of fact could find beyond a reasonable doubt that the defendant committed the offense.
ASSIGNMENT OF ERROR NO. 1
By this assignment, the defendant contends that the trial court erred in denying his motion to suppress. The evidence adduced at the Motion to Suppress hearing reflects the following facts.
After Angela Jefferson was abducted by the defendant, Gray went directly to Angela's home located at 66th Street and Thornhill. Gray informed Angela's mother of what had occurred at which time they called the Shreveport Police Department. Police officers responding to the call met Gray and Angela's mother at the corner of 69th Street and Thornhill. One officer took Angela's mother back home and the other two officers went to the corner of 70th Street and Thornhill where Gray had told them Angela had been abducted. Near the intersection of 70th and Thornhill police officers found lying on the side of the street a gold pendant and a black belt.
Gray informed the officers that he did not know the defendant's name; however, Gray informed the police officers that he knew the defendant's face and where he thought the defendant lived. The two officers and Gray then proceeded to attempt to find the defendant. During the course of the investigation, Gray and the officers found an individual named Charles Pouncy who knew the defendant and his name. At that point Gray, Pouncy, and the officers attempted to locate the defendant. As the officers were returning Pouncy to North *1072 Emerald Loop, Pouncy recognized the defendant's car under a carport at 264 North Emerald Loop. The officers then drove down one block from the address and allowed Pouncy and Gray to get out of the patrol car. The officers then returned to the North Emerald Loop address.
As the officers were walking to the door of the home, one of the officers shined his flashlight into the defendant's vehicle. The officers observed lying in the backseat of the vehicle a pair of blue pants, a white blouse, and a bra.
After the police officers knocked on the door of the home, a black male dressed only in a pair of blue jeans answered the door. The officers asked the black male if Richard Thomas lived there. The defendant then identified himself as Richard Thomas. The officers asked the defendant if they could speak to him outside, after which time they walked outside and talked.
The defendant informed the officers that he had been playing cards that entire evening. The defendant also told the officers that he had loaned his car to a person named Rusty Bristo.
During the period of time that the officers were searching for the defendant, Angela Jefferson had also called the Shreveport Police Department. Officers responding to Angela Jefferson's call were informed of her abduction and alleged rape by the defendant.
After speaking with the defendant, the officers at the North Emerald Loop address radioed Detective John Snell who had responded to the call of Angela Jefferson. Detective Snell told the officers at the North Emerald Loop address to arrest the defendant for aggravated rape.
At that point, Officer Watson of the Shreveport Police Department placed the defendant under arrest and informed him of his Miranda rights. Despite being informed of his Miranda rights, the defendant refused to sign the Miranda rights card.
The defendant was then transported to Shreveport Police Department Headquarters and the defendant's car was seized and towed to Police Headquarters.
On the morning of May 14, 1982 the defendant signed a Consent to Search form concerning his vehicle.
The defendant contends that the trial court erred in denying the Motion to Suppress statements given to the law enforcement officers and the physical evidence obtained from his automobile. Specifically, the defendant contends that at the point he was initially questioned by police officers at the North Emerald Loop address, he was in custody so as to trigger the necessity for Miranda warnings. Next, the defendant contends that statements made to Detective Snell should have been suppressed because they were made after the defendant had refused to sign two Miranda rights cards and that as a result of that illegality, statements made to Detective Prator should likewise be held inadmissible. And finally, the defendant contends that the physical evidence seized from his vehicle should be held inadmissible under the Fourth Amendment to the United States Constitution due to the fact that they are fruits of an illegal arrest without sufficient probable cause.
The defendant contends that under State v. Menne, 380 So.2d 14 (La.1980), the Louisiana Supreme Court found that an officer must give constitutional warnings to a person under investigation whenever the circumstances reasonably indicate that the interrogee has been deprived of his freedom in any significant way. In State v. Thompson, 399 So.2d 1161 (La.1981) the Louisiana Supreme Court enunciated factors relevant to this determination. In Thompson the court held that the determination of whether the detention is significant is to be made objectively from the totality of the circumstances. Factors relevant to the determination include (1) whether the police officer had reasonable cause under La.C.Cr.P. Art. 213(3) to arrest the interrogee without a warrant; (2) the focus of the investigation on the interrogee; (3) the intent of the police officer, determined subjectively, and (4) the belief of the interrogee *1073 that he was being detained, determined objectively. Whether or not there is a custodial interrogation under federal terminology or a significant detention under Louisiana terminology must be determined on a case by case basis.
In the present case, the officers who initially questioned the defendant only had information that Angela Jefferson had been abducted according to the story told to them by Tommy Gray. Pursuant to the officer's investigation of Gray's allegations, the officers located the defendant at the North Emerald Loop address. When the officers initially questioned the defendant, the officers were seeking to identify the defendant and to determine if a crime had in fact been committed. The officers' questions were investigatory rather than in the nature of an interrogation. Therefore, we find that the initial questioning of the defendant did not constitute a custodial interrogation triggering the necessity for Miranda warnings.
Next, the defendant contends that statements made to Detective Snell should be suppressed because they were made after the defendant had already refused to sign two Miranda rights cards. Miranda warnings had been read to the defendant once at the house by Officer Watson and once at the police station by Detective Wilson. In both of those instances, the defendant refused to sign the card from which his rights had been read to him; however, based upon the testimony of the officers, it is evident that the Miranda warnings had indeed been given.
The defendant contends that the admissibility of statements obtained after a person has decided to remain silent depends on whether his right to cut off questioning was scrupulously honored. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).
The determining factor as to the admissibility of a statement is whether it is given freely and voluntarily and not as a result of threats, coercion, or promises. State v. Jennings, 367 So.2d 357 (La. 1979). The failure to sign waiver provisions in and of itself is not enough to require suppression of a statement. State v. West, 408 So.2d 1114 (La.1982).
The Supreme Court found in State v. Singleton, 381 So.2d 828 (La.1980) that the police must scrupulously honor any request by an accused to remain silent, but that a refusal to sign a written waiver form of itself cannot amount to such a request. Therefore, it is clear that the refusal of the defendant in the present case to sign the Miranda rights card does not in and of itself indicate that any subsequent statements that were made were involuntary.
Testimony in the present case reflects that the statements given to police officers were given by the defendant freely and voluntarily and not as a result of threats, coercion, or promises. Therefore, the trial court correctly denied suppression of statements made to Detective Snell.
The defendant next contends that statements made to Detective Prator should be held inadmissible due to the illegality of the prior statements. However, we have found that the prior statements were given freely and voluntarily and thus admissible. Additionally, we find that the statements made to Detective Prator were given freely and voluntarily and with knowledge of Miranda warnings.
Next, the defendant contends that the physical evidence taken from his car should be held inadmissible due to the fact that they are the fruits of his illegal arrest without sufficient probable cause.
A warrantless arrest must be based on probable cause, which exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a person of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Morvant, 384 So.2d 765 (La.1980).
*1074 In the present case, the defendant had been identified by name as the person who had abducted Angela Jefferson. Additionally, the officers observed in the vehicle female clothing which fit the description of what Angela Jefferson had been wearing. Therefore, the facts and circumstances known to the arresting officer were sufficient to justify a person of ordinary caution in the belief that the defendant had committed a crime. Therefore, since the defendant's arrest was based upon probable cause the search of the defendant's vehicle did not constitute the fruit of an illegal arrest.
Additionally, the record reflects that the items seized were within the plain view of the officers. The record also reflects that the defendant consented to the search of his vehicle and signed a Consent to Search form.
Having found no merit to the defendant's contentions, we find that the trial court was correct in denying defendant's Motion to Suppress.
ASSIGNMENT OF ERROR NO. 5
By this assignment, the defendant contends that his convictions should be reversed because no rational trier of fact could find beyond a reasonable doubt that the defendant committed the offense of sexual battery contrary to LSA-R.S. 14:43.1.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard annunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard which was adopted by the legislature in an acting La.C.Cr.P. Art. 821 which pertains to post verdict motions for acquittal based on insufficiency of evidence, is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
Under LSA-R.S. 14:43.1, sexual battery is defined as follows:
Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender compels the other person to submit by placing the person in fear of receiving bodily harm:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
The defendant contends that the fact that the jury found the defendant guilty of the last remaining responsive verdict indicated that there were serious doubts by the jury whether the state had met its burden of proving its case beyond a reasonable doubt. Defendant contends that these doubts are buttressed by an examination of the inconsistencies in and contradictions of the testimony of Angela Jefferson, the inconclusive scientific and physical evidence and Angela Jefferson's reputation in the community for telling the truth.
The evidence of sexual battery in the present case is largely circumstantial. A brief review of the facts reflect that Angela Jefferson was abducted by gunpoint at the intersection of 70th Street and Thornhill. Thomas Gray identified the defendant as the man who had abducted Angela Jefferson.
Angela Jefferson testified at trial that the defendant took her to a field, tore the clothes off of her body, and then raped her. Angela further testified that she managed the escape and ran to a nearby home wearing only one white sock. In the course of the investigation by the Shreveport Police Department, another white sock was found in the field where Angela testified that she was raped. Additionally, Angela Jefferson's clothes were found in the defendant's vehicle. Michael Beason, a physician at the LSU Medical Center, conducted a rape examination *1075 of the defendant in the early morning hours of May 14, 1982. Dr. Beason testified that Angela Jefferson was emotionally anxious and upset which made it difficult to examine her pelvic area. Dr. Beason stated that he did not find any sperm during the course of his examination and also that there were no signs of any physical trauma.
Pat Wojtkiewicz of the North Louisiana Crime Lab, found sperm and seminal acid phosphate in the vaginal wash that was taken from the victim. Wojtkiewicz testified that it was his opinion that Angela had had sex with someone within 72 hours of the taking of the sample. However, due to the fact that he had a very low level of seminal fluid to test, he could not tell whether or not the defendant was responsible for the presence of the sperm and seminal acid phosphate in the sample.
Although the medical testimony did not establish that a rape actually had occurred, we find that a rational jury could have found that some form of sexual activity did take place. The jury was in the better position to determine the credibility of Angela Jefferson's testimony.
In view of the uncontradicted evidence of what happened both before and after the alleged sexual activity, we find that a rational trier of fact could have concluded that the state had proven the offense of sexual battery beyond a reasonable doubt.
Therefore, we find this assignment of error to be without merit.
DECREE
Finding no merit to defendant's assignments of error, the defendant's conviction and sentence is affirmed.
AFFIRMED.