LABORDE, Judge.
Defendants, Lamont Matthews and James King, were indicted by a Lafayette Parish Grand Jury on one count of second degree murder, a violation of La.R.S. 14:30.1, and one count of attempted second degree murder, a violation of La.R.S. 14:27 and 14:30.1. On February 11, 1988, defendants were found guilty as charged on both counts by a unanimous twelve person jury. Defense counsel waived all sentencing delays and each defendant was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence for the second degree murder conviction. Additionally, each defendant was sentenced to twenty-five years at hard labor for the attempted second degree murder conviction. Defendants have appealed their convictions based on six assignments of error. We affirm.
FACTS
On September 13,1986, between 9:00 and 9:30 p.m., George Blankenship and Donna Prejean were engaged in conversation on the Olivier Street sidewalk, located in the area of Lafayette commonly known as the “Block.” During their conversation, a dark blue Oldsmobile sedan pulled up beside the two, stopped and several shots were fired from the passenger side of the vehicle. The vehicle drove around the block and made a second pass, firing more shots in the direction of the victims. The automobile then turned the corner and was not witnessed in the area again. Both Ms. Prejean and Mr. Blankenship were shot in the attack. Ms. Prejean subsequently died of her wounds.
Although there were several witnesses to the incident, none of them were able to positively identify either defendant as an occupant of the vehicle. One witness testified that there were two individuals in the vehicle at the time of the shooting. Several witnesses stated that they observed the bearded driver wearing a light “bebop” *631 cap. Several witnesses identified the vehicle as a dark blue sedan with a temporary-license plate on its rear window.
Shortly after 10:00 p.m., a Louisiana State Police Trooper and an Acadia Parish Deputy, acting on a description of the suspect vehicle, the number of occupants and the temporary plate, made a traffic stop of a dark blue Oldsmobile sedan on the interstate, approximately two miles outside of Crowley. Defendant, James King, who was bearded at the time, was operating the vehicle. Defendant, Lamont Matthews, was seated in the passenger seat. Defendants were advised of their rights and transported to the Acadia Parish jail.
At the Acadia Parish Sheriffs Office, defendants were placed in separate rooms awaiting questioning by Lafayette authorities. Two Lafayette detectives were informed that suspects were in custody and arrived in Crowley at 11:20 p.m. to investigate. Lieutenant Dartez, of the Lafayette Police Department,.again advised King of his rights and inquired into the ownership of the vehicle and the defendants’ whereabouts prior to their detention. King signed a waiver of rights form and then stated that the pair accompanied an unidentified person on a trip from Houston to New Orleans in this unidentified person’s automobile. According to King, this individual was dropped at an unspecified location between the two cities. After originally denying being in Lafayette, King admitted the pair passed through the city. Asked whether the unidentified third person could be Tommy Alexander, under whose name the automobile was leased, Kihg stated that the person might be Alexander, but that he was not sure. At that point, King asked to make a telephone call and stated that he would not discuss the matter further. The officers discontinued questioning at that time.
In a separate room, Detective Warren advised defendant Matthews of his rights. After refusing to sign a waiver of rights form, Matthews stated that he had heard some people had been hurt in Lafayette. In what was described as “almost a spontaneous exclamation,” Matthews said, “sometimes it’s business; some people get hurt. It’s simply business.” Matthews terminated the conversation right after that remark.
ASSIGNMENTS OF ERROR NO. 1 AND 2
These two assignments of error will be discussed together, as they both relate to the same legal issue. By these assignments of error, the defendants contend that the trial judge committed reversible error in admitting inculpatory statements made by the defendants, while in custody, that were • obtained in violation of their constitutional rights.
We begin by noting that the determining factor as to the admissibility of the statements is whether they were given freely and voluntarily and not as the result of threats, coercion or promises. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Jennings, 367 So.2d 357 (La.1979). The state must establish that the defendant was advised of his Miranda rights and that there was a valid waiver of those rights. State v. Knapp, 378 So.2d 911 (La.1979). The evidence is clear that neither of the defendants’ statements was elicited through the use of threats, coercion or promises. It is also clear that the defendants were advised of their rights at the time of their arrest and again before the interrogation took place. Furthermore, neither defendant requested the presence of counsel during the period when the statements were made.
Defendant Matthews argues that his refusal to sign a waiver of rights form constituted an assertion of his constitutional rights, specifically, the right to counsel, and therefore, any statements made subsequent to the refusal were obtained in violation of his rights. Matthews refused to sign the waiver of rights form after he had been read his rights. After refusing to sign, the defendant inquired as to what the “deal was.” He then stated that he had heard that “some people got hurt in Lafayette,” and further stated, “all I’m going to say is that sometimes it’s business; some people get hurt. It’s simply business.”
*632 We disagree with the defendant’s position and hold that the trial judge did not err in admitting the statement. A signature on a waiver of rights form is not necessary to establish the admissibility of an inculpatory statement where other evidence demonstrates that the defendant understood his rights and voluntarily waived them when the custodial statement was made. State v. West, 408 So.2d 1114 (La.1982); State v. Turnbull, 377 So.2d 72 (La.1979); State v. Singleton, 311 So.2d 881 (La.1975). Absent a written waiver, the state may, by an appropriate showing, discharge its burden of proving voluntariness by proving that the defendant was informed of his rights, stated that he understood them and then made a statement. State v. Turnbull, supra. Matthews was informed of his rights upon his arrest and again before he made the statement. It is also clear from the investigating officers’ testimony that Matthews understood his rights. In addition, there is nothing in the record to suggest that Matthews asserted his right to counsel at questioning; nor should the refusal to sign a waiver form be interpreted as an assertion of that right. Therefore, we conclude that the trial judge properly admitted the statement made by Matthews.
Defendant King also argues that his statement concerning the ownership of the vehicle was obtained in violation of his constitutional rights. We do not agree. King was informed of his rights at the time of his arrest and, for a second time, before the custodial interrogation. The evidence indicates that he understood them. He also signed a waiver of rights form, and, at no time during the interview, did he request the presence of an attorney. King did assert his right to remain silent, which the investigating officers scrupulously honored, but only after he had already made the statement. Consequently, we find no merit in this assignment of error.
ASSIGNMENTS OF ERROR NO. 3 AND 4
Again, these two assignments of error will be discussed together because they are legally interrelated.
These assignments urge error on the part of the trial court in failing to take action to avoid prejudice to defendants when a witness for the State misquoted defendant Matthews’ inculpatory statement. The State witness, Officer Dugar, substituted “sometimes people get killed in business”' for Matthews’ “sometimes it’s business; some people get hurt” in his testimony at trial. The defendants argue that the misquotation denied them a fair trial, and that the error was compounded by the trial judge’s refusal to admonish the jury to disregard the remark under LSA-C. Cr.P. art. 771. We do not agree. It is well-established that unresponsive or volunteered testimony is not chargeable against the State as a basis for upsetting a conviction. State v. Luneau, 323 So.2d 770 (La.1975); State v. Howard, 283 So.2d 197 (La.1973). We find that there was no bad faith on the part of the State, as Officer Dugar’s variation on the statement was in no way solicited by the prosecutor. It was purely spontaneous testimony that could not have been anticipated by the prosecutor since the officer corréctly quoted the statement earlier in his testimony during the suppression hearing.
We also find that the trial judge was within his discretion in refusing to admonish the jury to disregard the remark made by the State’s witness. LSA-C.Cr.P. art. 771. This article provides, in pertinent part, that:
“In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury....”
Judge Gautreaux determined that even though there was a misquotation by a witness for the state, it did not prejudice the defendants to the extent that an admonishment to the jury was warranted. We *633 agree that the mistake was not so egregious as to be prejudicial to the defendants.
Finally, the defendants argue that the State did not comply with LSA-C.Cr.P. art. 768, which mandates reversal. This article requires the prosecutor to provide the defense with written notice of inculpatory statements made by the defendants which will be used at trial. The defendants contend that although they were provided with written notice of the statement made by Matthews, the statement, when reproduced at trial, was not the same. Consequently, there was substantial noncompliance with the article. We do not find this argument compelling. LSA-C.Cr.P. art. 768 requires the prosecutor to disclose the existence of an inculpatory statement, but not its content. State v. Jackson, 523 So.2d 251 (La.App. 2d Cir.), writ denied, 530 So.2d 565 (La.1988). Additionally, the prosecutor in the instant case could not anticipate the alteration of the statement. Therefore, we find that the actions of the prosecutor represented full compliance with LSA-C.Cr.P. art. 768.
Accordingly, assignments of error number three and four have no merit.
ASSIGNMENT OF ERROR NO. 5
In this assignment of error, defendants argue that the evidence presented at trial was insufficient to establish all essential elements of the crimes beyond a reasonable doubt. Defendants emphasize that no witness to the shooting could identify the occupants of the automobile and that some of the eyewitnesses who did testify were convicted felons, at least one of whom admittedly testified with the expectation of receiving a reduced sentence. Defendants also stress that no firearm was seized in the investigation and that atomic absorption tests were unable to determine whether either defendant had fired a weapon. Finally, defendants reurge a theory of innocence rejected by the jury; that is, that Tommy Alexander, under whose name the hotel and automobile were leased, and who had previously had an armed confrontation with the victim, George Blankenship, committed the crimes and used defendants as scapegoats for the shootings.
The proper standard of review in determining the sufficiency of the evidence is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tomlinson, 457 So.2d 651 (La.1984). We believe that under this standard a rational trier of fact could have found the defendants guilty beyond a reasonable doubt. Eyewitnesses to the shooting testified that the shots were fired from a dark blue sedan with a temporary license tag on its rear window. Defendants were arrested in Crowley one hour after the commission of the crime in a vehicle matching the witnesses’ descriptions. One witness informed investigators that one of the suspects had a beard. Defendant King had a beard at the time of his arrest. Another witness testified that he met the defendants earlier that day when he tried to sell them drugs. The defendants were in their car at the time, and the witness was able to observe both them and the car at close range. That witness further testified that he was present at the shooting and that the car used in the attack was the same car he had seen the defendants in earlier.
Along with the eyewitness testimony, there is physical evidence to link the defendants to the commission of the crime. The State’s expert witness testified that a spent bullet casing discovered in the vehicle was fired from the same weapon as casings found in the area. These casings also came from the same caliber bullet removed from both victims. Also, the vehicle the defendants were stopped in was leased to a Tommy Alexander. Contents of a Lafayette hotel room rented under the same name contained fingerprints of the defendants. Finally, pages from a phone book discovered in this same room were seized from the vehicle occupied by the defendants. We are also not persuaded by the defendants’ claim that they were set up by Tommy Alexander, as there is no evidence *634 whatsoever to support this allegation. Thus, we conclude that the evidence was sufficient for the jury verdict of guilt beyond a reasonable doubt.
For these reasons, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 6
Defendants request this court to review the records for errors patent. There appear to be no errors patent on the face of the record. However, the sentences imposed by the trial court should be clarified. The trial judge neglected to specify whether the sentences imposed were to be served concurrently or consecutively. LSA-C.Cr. P. art. 883 mandates that the sentences be served concurrently because the offenses were part of the same act and common scheme. We determine that the sentences for each defendant should run concurrently-
For the foregoing reasons, we affirm the trial court’s decision.
AFFIRMED.