972 So.2d 1214 (2007)
STATE of Louisiana, Appellee,
v.
Jerry W. WILLIAMS, Jr., Appellant.
No. 42,803-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2007.
*1215 Edward K. Bauman, Lake Charles, for Appellant.
Paul J. Carmouche, District Attorney, John Ford McWilliams, Jr., Lea R. Hall, Jr., Assistant District Attorneys, for Appellee.
Before PEATROSS, MOORE and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of *1216 Caddo, State of Louisiana, where a jury convicted defendant, Jerry W. Williams, Jr., of second degree murder, a violation of La. R.S. 14:30.1. He was sentenced to mandatory life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. Williams now appeals. For the following reasons, the conviction and sentence are affirmed.

FACTS
On February 24, 2005, the victim, Mickel Shane Howard ("Shane"), was shot and killed in the stairwell of his apartment in Shreveport, Louisiana. He was shot multiple times in the back with a 9mm handgun. In the hours leading up to the shooting, there was a series of telephone calls between Jerry Williams (also known as "G-Wayne") and Cherie Hudson, the victim's live-in girlfriend. The cell phone records also reveal that Williams called Shane's cell phone numerous times.
The phone calls concerned a drug transaction. On several prior occasions, Cherie purchased crack cocaine from Williams in exchange for Lortabs, another Schedule II controlled dangerous substance. At or around 9:00 p.m. on February 23, 2005, Williams, Cherie, and Shane were arguing about another drug transaction. Although the facts are in dispute as to the content of their discussion, the evidence is clear that there was a heated argument. It is also undisputed that Cherie and Shane began to argue amongst themselves.
Cherie's then 15-year-old daughter, Brittany, placed a 911 call to the police concerning the domestic situation at the apartment. Shortly thereafter, the police received another 911 call concerning a shooting at the apartment. When the police arrived at the scene, they found Shane dead.
Both Cherie and Brittany identified Williams as the shooter. Based on their interviews and through additional information received from their investigation, the police arrested and charged Williams with second degree murder. On February 15, 2007, after a trial, the jury found Williams guilty as charged. The trial court sentenced Williams to mandatory life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. Williams filed a Motion for Post Verdict of Acquittal which was denied. This appeal ensued.

LAW AND DISCUSSION

Sufficiency of the evidence
In his first assignment of error, Williams argues that there is insufficient evidence that he was the shooter. Specifically Williams asserts that there were no fingerprints, ballistics or DNA evidence linking him to the crime. When sufficiency of the evidence and one or more trial errors are raised as issues on appeal, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.04/02/97), 691 So.2d 347, writ denied, XXXX-XXXX (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency claim, as set forth in Jackson v. *1217 Virginia, supra, is now legislatively embodied in La. C. Cr. P. art. 821. This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, XXXX-XXXX (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442. The reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App.2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
As a rule, in cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden. State v. Hughes, XXXX-XXXX (La.11/29/06), 943 So.2d 1047; State v. Powell, 27,959 (La. App. 2 Cir. 4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. A witness' failure to identify the suspect at a pretrial lineup is not grounds to bar an in-court identification; rather, it affects the weight of the testimony. State v. Long, 408 So.2d 1221 (La.1982); State v. Ford, 26,422 (La.App.2d Cir.09/21/94), 643 So.2d 293. Evidence may be introduced to explain any discrepancy. Id. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La. App.2d Cir.04/08/96), 672 So.2d 428, writ denied, XXXX-XXXX (La.10/31/97), 703 So.2d 12.
Relative to the facts of this case, in order to prove the crime of second degree murder, the state must prove beyond a reasonable doubt that Williams acted in accordance with the circumstances listed in La. R.S. 14:30.1(A), which provides in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm.
The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, XXXX-XXXX (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Dooley, 38,763 (La.App.2d Cir.09/22/04), 882 So.2d 731, writ denied, 2004-2645 (La.02/18/05), 896 So.2d 30.
Here, the issue raised is not whether the crime of second degree murder was committed, but whether Williams was the person who committed it. While Williams is correct that there were no fingerprints, ballistics or DNA evidence linking him to the crime, the testimony of Brittany and Cherie, Williams' cellular phone records, and Williams' statement made in the presence of Aaron Dobbins, a cell mate, were more than sufficient to support the jury's conclusion beyond a reasonable doubt that Williams was the person who shot and killed Mickel Shane Howard.
Brittany Hudson testified that she followed Shane down the stairs toward the front door of the apartment where she saw Williams with a gun in his hand seconds before Shane was shot. Brittany identified Williams as the shooter during the first photo lineup with a high degree of certainty as well as identifying Williams at trial. Because Brittany heard several phone calls on speaker phone the evening *1218 of the shooting, Brittany was able to identify Williams as the shooter based on her recognition of his voice. In addition, Brittany was able to recognize Williams' phone number on Caller ID. When Williams called Cherie shortly after the shooting, a police officer was standing next to Brittany at the apartment when the phone rang. Brittany answered the phone and told the officer: "This is the guy, this is the guy who did this." Caller ID and the cellular phone revealed that the call was placed from Williams' cell phonea number which he admitted was his during his recorded statement to police.
Further, Cherie and Brittany testified that there was a heated argument over the phone between Shane and "G-Wayne" in the hours leading up to the shooting. The cellular phone records confirmed that there, were numerous calls between the apartment telephone line and Williams, and between Shane and Williams. The phone records also reveal that the last call placed to Shane's cell, phone from Williams was moments before Shane was shot, which is consistent with the testimony that Shane answered a call from Williams as he was heading down the stairs to confront Williams, stating, "I'm on my way."
Finally, the record reveals that Williams fabricated his alibi. The state presented two witnesses who directly contradicted Williams' recorded statement as to his whereabouts during the early morning hours of February 24, 2005. According to Williams, he was intoxicated that night and did not leave his friend Shontelle Smith's house until approximately 10:00 a.m. on February 24, at which time he called for a taxicab. However, Shontelle testified the last time she saw him was around 10:00 p.m. on February 23, 2005, and that when she woke up for work around 6:00 a.m. the next morning, Williams was gone. Williams' mother testified that she saw her son return home in the early morning hours of February 24, 2005. Indeed, the police could not verify a single fact of Williams' alibi, not even the supposed name of the taxi cab driver, "Rudy." Williams did not present any alibi witnesses on his behalf. Fabrication is evidence of consciousness of guilt. State v. King, 41,084 (La.App.2d Cir.06/30/06), 935 So.2d 815, writ denied, XXXX-XXXX (La.02/16/07), 949 So.2d 411.
It is clear that the state negated any reasonable probability of misidentification. The evidence viewed in the light most favorable, to the prosecution proves beyond a reasonable doubt that Williams committed the offense for which he was convicted. This assignment is, therefore, without merit.

Motion for Mistrial
In his second assignment of error, Williams argues that the trial court erred by failing to grant a mistrial based on Aaron Dobbins' testimony concerning a purported inculpatory statement that Williams made while being held for the instant charges implicating him in Shane's murder. Specifically, Williams argues that the state failed to disclose the existence of this discoverable statement in violation of La. C. Cr. P. art. 716.
On March 11, 2005, Williams filed a Motion for Discovery seeking, among other things, information about the "existence of, in writing, any oral statement of [sic] confession of any nature, made by the defendant which the District Attorney intends to offer as evidence at the trial" pursuant to La. C. Cr. P. art. 716(B). At trial, the state called Aaron Dobbins as a witness. Dobbins testified that while he was incarcerated *1219 with Williams who was being held on charges for the instant matter, Williams told two other inmates, in Dobbins' presence, that "[Dobbins] is the dude that's in my paperwork on that m* * * * * f* * * * * I murced."[1] Defense counsel immediately objected and after a bench conference, the trial court overruled the objection. Immediately upon the conclusion of the state's case-in-chief and outside the presence of the jury, the defense moved for a mistrial.
The basis of the mistrial motion was the state's failure to disclose the statement that Williams allegedly made in Dobbins' presence. The state contended that it first became aware of the statement in February 2006, and that according to its notations in the file, the Assistant District Attorney orally discussed with defense counsel the existence (but not the content) of the statement shortly thereafter. The state also asserted that before the trial commenced, it showed defense counsel every exhibit and walked through every witness that was going to be introduced, including the fact that "Aaron Dobbins is going to come in and talk about his initial contact with the police and statements he made at [Caddo Correctional Center] with your client."
Louisiana C. Cr. P. art. 716(B) states:
Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
Louisiana C. Cr. P. art. 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
As noted by the trial court, the rules of discovery are intended to eliminate unwarranted prejudice arising from surprise testimony, to permit the defense to meet the state's case, and to allow proper assessment of the strength of its evidence in preparing a defense. State v. Thomas, 39,194 (La.App.2d. Cir.01/26/05), 892 So.2d 161, writ denied, XXXX-XXXX (La.06/03/05), 903 So.2d 455. However, the failure of the state to comply with discovery rules does not bring automatic reversal; rather, prejudice must be shown. Id.; State v. Harris, XXXX-XXXX (La.02/26/02), 812 So.2d 612. Determining whether such prejudice has resulted is within the sound discretion of the trial judge. State v. Matthews, 552 So.2d 590 (La.App. 2d Cir.1989), writ denied, 559 So.2d 137 (La.1990); State v. Brown, 557 So.2d 1085 (La.App. 2d Cir. 1990).
When the defendant is lulled into misapprehension of the strength of the state's case through the failure of the district attorney to timely or fully disclose and the defendant suffers prejudice, basic unfairness results which constitutes reversible error. State v. Harris, supra. Although a mistrial is among sanctions which the trial court may choose if it views the circumstances in a case as a discovery violation, a mistrial is a drastic remedy *1220 and, except in instances where the mistrial is mandatory, is warranted only when a trial court error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. Id. Moreover, as provided in La. C. Cr. P. art. 729.5, the article which details the arsenal of sanctions available for discovery violations, no particular remedy is mandated.
The trial court denied the motion for mistrial, finding that while it would have been better practice for the state to have advised Williams of the existence of the statement in writing, the state met its obligation when it orally advised the defense on two separate occasions of the existence of Williams' statement to Dobbins before trial. Further, the trial court found that Williams failed to show that he was substantially prejudiced by any failure by the state to disclose the existence of the statement. We agree.
In the case at hand, Williams is correct that the state failed to disclose in writing the existence of his statement to Dobbins prior to Dobbins' testimony at trial notwithstanding a formal discovery request for the same. Not considering whether or not the state orally advised the defense of the existence of the statement, we find that Williams has failed to demonstrate that he was prejudiced by the perceived error.
First, the state presented other evidence which was sufficient to prove that defendant committed the offense for which he was convicted. Both Cherie and Brittany described a heated argument over the telephone between Shane and Williams in the hours leading up to the shooting, as evidenced by Williams' own cell phone records. Brittany further testified that she accompanied Shane as he confronted Williams and that she saw Williams with a gun in his hand immediately before she turned away in fear and heard multiple gunshots. Even without Dobbins' testimony about Williams' alleged "murced" statement at the Caddo Correctional Center, the evidence proved beyond a reasonable doubt that Williams was the perpetrator. Second, a review of the record shows that the element of surprise, often an aspect of the determination of prejudice, is greatly diminished in this case. The statement was made in the presence of a person that Williams admittedly knew was a state's witness in his case.
Finally, given that Dobbins' testimony occurred on February 14, 2007, Williams had almost 24 hours to provide his lawyer with the names of the other two inmates who Dobbins claimed were present so that they could be brought to court to deny the statement. However, Williams did not present any witnesses. After a thorough review of the record, we find that Williams failed to establish that he was substantially prejudiced in the presentation of his defense, and thus, this assignment lacks merit.

ERROR PATENT
At sentencing the trial court partially advised Williams that he had "two years" to file for any post-conviction relief pursuant to La. C. Cr. P. art. 930.8. We advise by this opinion, as a matter of clarification, that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.

CONCLUSION
For the foregoing reasons, we affirm the conviction and sentence of Jerry W. Williams, Jr.
AFFIRMED.
NOTES
[1] As explained by Dobbins during his testimony, "paperwork" refers to the discovery materials Williams received and "murced" is street slang for murder.